**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JACLYN CURRIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 09-cv-866-MJR |
| TOM CUNDIFF, | ) |
| WILLIAMSON COUNTY, ILLINOIS, | ) |
| UNKNOWN EMPLOYEES AND | ) |
| SUPERVISORS OF WILLIAMSON | ) |
| COUNTY JAIL, | ) |
| GARY TYNER, | ) |
| DAVID SWEETIN, | ) |
| ROBERT CRAIG, | ) |
| DENNIS PINKERTON, | ) |
| OFFICER DARREN FERRELL, | ) |
| OFFICER R. HORN, | ) |
| OFFICER BRANDY MILANI, | ) |
| OFFICER C.J. WATTS, | ) |
| HEALTH PROFESSIONALS, LTD., | ) |
| DOCTOR JOGENDRA CHHABRA, | ) |
| MARILYN ANN LYNN, and | ) |
| BENNIE VICK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

In December 2008, Phillip Okoro, who was being held in the Williamson County Jail, died as a result of diabetic ketoacidosis.[1]  Plaintiff Jaclyn Currie, as administrator of Okoro's estate, and as the personal representative of his heirs, brought suit on October 14, 2009 (Doc. 2).  Plaintiff's Second Amended Complaint (Doc. 59) now controls.  Plaintiff brings suit

---

[1] According to the National Institute of Health (NIH), diabetic ketoacidosis occurs in people with diabetes when the body cannot use sugar (glucose) as a fuel source because there is no insulin or not enough insulin, so fat must be used for fuel instead, which creates a byproduct known as ketones.  Keytones are acids, and in high levels they are poisonous; this condition is known as ketoacidosis and it can be fatal.  http://www.nlm.nih.gov/medlineplus/ency/article/000320.htm

against prison officials, the contract healthcare providers and their employer, Health Professionals, Ltd., and Williamson County, Illinois.   The 93-count complaint asserts the following claims:

| | |
|---|---|
| Counts I-XV: | civil rights claims pursuant to 42 U.S. C. § 1983; |
| Counts XVI-XXX: | claims under the Illinois Wrongful Death Act, 740 ILCS 180/1; |
| Counts XXXI-XLV: | claims under the Illinois Survival Act, 755 ILCS 5/27-6; |
| Counts XLVI-LX: | claims under the Illinois Family Expense Act, 750 ILCS 65/15, and the common law; |
| Counts LXI-LXXV: | state law claims for intentional infliction of emotional distress; |
| Counts LXXVI-LXVII: | state law claims of *respondeat superior* liability; |
| Count LXXVIII: | a state law claim for indemnification; |
| Counts LXXIX-XCIII: | state law claims for willful and wanton conduct. |

Defendant Vick, as the current Sheriff of Williamson County, is sued in his official capacity only.  Defendant Cundiff, the former Sheriff, and Defendant Tyner, Captain of the Williamson County Jail, are both sued in their official and individual capacities.  The Second Amended Complaint does not specify in what capacity the other individual defendants are sued, and Defendants have not raised this issue.  For purposes of the claims under 42 U.S. C. § 1983, they will be considered to be sued in their individual capacities.  *See Miller v. Smith*, 220 F.3d 491, 493-494 (7th Cir. 2000); *Hill v. Shelander*, 924 F.2d 1370, 1373-1374 (7th Cir. 1991).

Before the Court is the motion for summary judgment filed by Defendants Bennie Vick, in his official capacity as Sheriff of Williamson County, Tom Cundiff, individually and in

his official capacity as former Sheriff of Williamson County; Captain Gary Tyner, individually and in his official capacity as Captain of the Williamson County Jail, the County of Williamson, Lieutenant David Sweetin, Lieutenant Robert Craig, Sergeant Dennis Pinkerton, Officer Darren Ferrell, Officer Ryan Horn, Officer Brandi Milani and Officer C.J. Watts (Doc. 89).[2]  Plaintiff Jaclyn Currie has filed a response (Doc. 97), to which the Defendants have replied (Doc. 100).

## 1.  Synopsis of Material Facts

Defendants' motion (Doc. 89) and Plaintiff's response (Doc. 97) both contain detailed recitations of the facts, with citations to deposition testimony and documentation. There is little dispute regarding the majority of the facts underlying this case, so only a synopsis is necessary to place the issues in context.  Factual disputes and Plaintiff's expert opinion evidence will be discussed separately, if necessary for the resolution of Defendants' motion for summary judgment.

On October 16, 2008, Phillip Okoro was arrested after a neighbor complained that Okoro had thrown a rock through her car window.  Okoro was charged with Criminal Damage to Property, a misdemeanor offense.  He was taken to the Williamson County Jail, and that is where he stayed until his death on December 23, 2008.

At all relevant times, Defendant Tom Cundiff was the Sheriff of Williamson County.  Gary Tyner was Captain and Administrator of the Jail.  Lieutenant Dave Sweetin's was responsible for ensuring inmates received the proper diabetic meals, based on a diabetic menu plan produced by Marion Memorial Hospital.  Defendants Craig, Pinkerton, Ferrell, Watts, Milani and Horn were all correctional officers at the Jail.

---

[2] Defendants Health Professionals, Ltd., Doctor Jogendra Chhabra and Marilyn Ann Lynn, generally referred to as the "Health Professionals," do not join in this motion. Defendant "Unknown Employees and Supervisors of Williamson County Jail" have never been identified and served with summons and the complaint.

Health Professionals, Ltd., ("HPL") was the contract provider of healthcare services for the Williamson County Jail.  HPL provided correctional officers with training regarding general health and mental health.  Correctional officers also received mental health training at the St. Clair County Correctional Academy.   HPL is responsible for inmate health assessments, provision of general health care, and advising the Jail administration and correctional officers regarding medical services.  HPL also provides prescription medications for inmates and detainees, as prescribed by HPL doctors.  Pursuant to the contract with HPL, Dr. Chhabra works at the Jail 2 hours per week, and is available on-call 24 hours per day, seven days per week.   Nurse Lynn, a registered nurse, is at the Jail 25 hours per week, and is otherwise on-call 24 hours per day, seven days per week.

HPL medical providers set the protocol for diabetics housed at the Jail.  The standard protocol for diabetic detainees and inmates is to check blood sugar levels twice daily and administer the appropriate dosage of insulin. Diabetic detainees and inmates at the Jail are provided three diabetic meals per day and also a diabetic snack each evening.   HPL trained the correctional officers at the Jail how to use Accu-Check blood sugar meters, chart the levels and administer insulin.  Nurse Lynn instructed the officers how to administer the insulin.  It was the correctional officers, not HPL staff, who routinely delivered the food and carried out the monitoring and insulin injections.  This was due in part because Okoro had once thrown an insulin needle at Nurse Lynn, and there had been other behavioral concerns (and, presumably, because Nurse Lynn only worked at the Jail 25 hours per week).  As a practical matter, the officers allowed Okoro to administer the insulin shot himself.  The officers would direct any questions to Nurse Lynn.  Also, if, for example, a diabetic inmate did not eat his diabetic meal,

that would be reported to Nurse Lynn.  Nurse Lynn and Dr. Chhabra monitored the records of Okoro's insulin levels and injections.

Franklin-Williamson Human Services, not HPL, was the contract provider of mental health evaluations and services.  Darla Dawson, who has a bachelor's degree in psychology, was the crisis counselor assigned to the Jail.

After Okoro was brought to Jail on October 16, 2008, Rebecca Nance, who is not named as a defendant, completed Okoro's booking chart in the computer, noting that Okoro had stated that he was taking medication for diabetes; that fact was also relayed to Nurse Lynn.  At an unspecified time, Okoro's foster-father also called and relayed to Captain Tyner that Okoro was diabetic.

On the first day Okoro was incarcerated, Nurse Lynn met with him and discussed his diabetes.  According to Lynn, Okoro was uncooperative and not forthcoming with information, but she did glean that he did not recall the last time he had checked his blood sugar or taken insulin.  Nurse Lynn subsequently discussed Okoro's medical history with Dr. Chhabra, who assessed what was needed and established the appropriate treatment protocol.  Okoro's blood sugar was to be checked twice daily (8:00 a.m. and 3:00 p.m.); a specific dosage of insulin was to be administered in the morning and afternoon and, if needed, additional units of insulin were to be administered based on a sliding scale.

Mental health worker Darla Dawson reviewed Okoro's medical file, spoke with Nurse Lynn and met with Okoro.  Dawson considered Okoro moderately depressed, and she opined that Okoro did not need any further mental health evaluations or psychiatric treatment. She recommended that he remain in isolation for the safety of himself, the guards and the

medical staff.  She further recommended that the Jail continue to monitor and treat his diabetes. Finally, she recommended that the Jail contact Franklin-Williamson Human Services as needed.

On October 28, 2008, Dr. Chhabra reviewed Okoro's charts (including Dawson's report) and examined him in person.  Okoro's medication and treatment protocol were not adjusted.

On November 11, 2008, Dr. Klug (not a defendant in this case) conducted a mental fitness examination in connection with Okoro's criminal case.  Dr. Klug noted apparent auditory hallucinations and persecutory delusions.  Dr. Klug also observed that Okoro's blood sugar level was "not controlled," he was "not in good shape," and '[h]e certainly needs treatment."  "Something needs to be done."   Dr. Klug reported to the Court that Okoro was not competent to stand trial.  Doc. 97, Exhibts N, JJ.

Although the Jail is equipped with a video recording system, audio is not recorded, and there is no direct view of Isolation Cell #1, where Okoro was celled at the time of his death.  Consequently, only a video of the hallway outside the cell is available.  Correctional Officers are required to check on inmates every 30 minutes (or less), and there are logs of these checks.

Correctional Officer Watts recalls that on the afternoon before Okoro died, Okoro had made a joking remark about getting a "computer phone" and then being able to get more dates than Dennis Pinkerton.  Leading up to the emergency situation on December 23, 2008, Officers Horn and Crites were the last to check on Okoro.  Horn checked at 7:56:30 a.m., and Crites checked at 7:57:36 a.m.  The last official log entry was at 8:24:19 a.m. on December 23, 2008.  Officers Ferrell, Milani, Horn, Watts and Crites gathered at Okoro's cell to perform the morning insulin check and injection, but Okoro did not respond.  Horn and Ferrell entered the

cell, recognized the emergency and began CPR.  According to Horn, Okoro's body had changed position from when he last checked Okoro's cell at 7:56 a.m.  The surveillance video recording does not show anyone going into Okoro's cell between Horn's cell check and when the team arrived to administer insulin.    An emergency was declared at 8:24 a.m. An ambulance was called and Okoro was taken to the hospital, where he was pronounced dead.   An autopsy indicated that Okoro died of the consequences of diabetic ketoacidosis (Doc. 97, Exhibit DD).

As a point of reference, Dr. Louis Philipson, Plaintiff's expert regarding diabetes and ketoacidosis, explains:

> Symptoms include thirst, decreased vision, increased urination, weight loss, weakness, fatigue, shortness of breath, abdominal pain, headache, and a fruity smell on the breath. Death can result from low blood pH, which can cause altered mental status and cardiac arrest. In the case of chronic ketosis, the patient with diabetes can become accustomed to the slow onset of symptoms and many if not all of the usual symptoms might not appear. Over many days the patient builds up a level of ketones and ketoacids that can cause fluid and electrolyte shifts, abnormalities in potassium, sodium and other electrolyte in the blood, so that an arrythmia resulting in cardiac arrest or a stroke from the hypercoagulable state is a common cause of death.

Doc. 97, Exhibit V, pp. 9-10.


## 2.  Summary Judgment Standard

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Mercatus Group, LLC v. Lake Forest Hospital,* 641 F.3d 834, 839 (7th Cir. 2011).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that there is no genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 252.

The evidence is viewed in the light most favorable to the non-movant, and "all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.  Summary judgment is inappropriate when alternate inferences can be drawn from the evidence, as the choice between reasonable inferences from facts is a jury function. *Id.; Spiegla v. Hull,* 371 F.3d 928, 935 (7th Cir. 2004).  However, conclusory allegations do not create issues of fact that will forestall summary judgment.  *See Sublett v. John Wiley & Sons, Inc.,* 463 F.3d 731, 740 (7th Cir. 2006).

### 3.  <u>Analysis</u>

Defendants present the following arguments:

1.  The critical elements necessary for §1983 liability are lacking because the Defendants did provide mental and medical care to Phillip Okoro while he was a detainee at the Williamson County Jail;

2.  Without an individual violation of Phillip Okoro's constitutional rights, Plaintiff's *Monell* claim against the County, and the associated official capacity claims against Sheriff Vick, Sheriff Cundiff and Captain Tyner, cannot survive;

3.  Plaintiff also is unable to establish the other necessary elements of the *Monell* claims: (a) there is no evidence of a prior pattern of constitutional violations in the Jail demonstrating the Sheriff's culpable failure to adopt or implement adequate policies or practices in the Jail; and (b) there is no evidence that deficiencies in Jail policy and practice were the moving force behind any prior constitutional violations or any violation of Phillip Okoro's constitutional rights;

4.  Plaintiff is unable to establish her supplemental state law claims for the same reasons that she is unable to demonstrate Defendants' deliberate indifference on the §1983 claims; and

5.   In addition, the Illinois Tort Immunity Act provides Defendants with immunity from liability on each of the supplemental state law claims.

### a.   Federal Civil Rights Claims Against the Individual Defendants

As a preliminary matter, the appropriate standard for liability must be determined. Defendants characterize Mr. Okoro as a pretrial detainee and analyze the Section 1983 civil rights claims using the "deliberate indifference to a serious medical need" standard usually applied for such claims under the Fourteenth Amendment.  *Smith v. Knox County Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012).   The same deliberate indifference standard (albeit by way of the Eighth Amendment) is applicable to inmates who have been convicted.  *Id.*   However, as Plaintiff correctly observes, it does not appear that Okoro can be characterized as a detainee, he is merely an arrestee.   In reply, Defendants did not address Okoro's legal status and whether the Fourth Amendment standard is applicable (*see* Doc. 100).

Defendants belatedly seek leave to supplement their reply to "correct a misstatement of the law"—meaning Plaintiff's statement that the Fourth Amendment applies (Doc. 147).  The time for briefing the summary judgment motion and addressing the applicable legal standard has passed, at least for purposes of the motion for summary judgment.  Plaintiff's raised the applicability of the Fourth Amendment standard in their response to Defendants' motion for summary judgment, and Defendants filed a reply, but elected not to address the issue. Therefore, Defendants' motion to supplement their reply (Doc. 147) is **DENIED**.  In any event, Defendants are incorrect in asserting that the legal standard shifts from the Fourth Amendment to the Fourteenth Amendment at the time the individual "is brought before the Court for a First Appearance or an arraignment" (Doc. 147, p. 2 ¶ 5).  Defendants appear to be relying upon a

loose statement of the law from *Pyka v. Village of Orland Park*, 906 F.Supp. 1196 (N.D.Ill. 1995):

> [T]he Fourth Amendment protects a person from the initial moment of seizure (the arrest) through the period of custody that culminates in a formal arraignment or probable cause hearing. After a formal charge is made, the arrestee becomes a pretrial detainee who is protected by the Fourteenth Amendment Due Process Clause.

*Id.* at 1217.

In *Gerstein v. Pugh,* 420 U.S. 103, 123-125 (1975), the Supreme Court delineated which legal standard controls at which procedural milestone.  The Court of Appeals for the Seventh Circuit has summarized the *Gerstein* scheme:

> The Fourth Amendment protects against unreasonable seizures; an arrest is a seizure, and the Fourth Amendment affords persons who are arrested the further, distinct right to a judicial determination of probable cause "as a prerequisite to extended restraint of liberty following arrest." *Gerstein,* [420 U.S. at 114]. The judicial determination of probable cause may be made before the arrest (in the form of an arrest warrant) or promptly after the arrest, at a probable cause hearing (sometimes called a *Gerstein* hearing). But whether the arresting officer opts to obtain a warrant in advance or present a person arrested without a warrant for a prompt after-the-fact *Gerstein* hearing, the Fourth Amendment requires a *judicial* determination of probable cause. *See Haywood v. City of Chi.,* 378 F.3d 714, 717 (7th Cir. 2004) (even though warrantless arrest was "clearly" supported by probable cause, Fourth Amendment required a probable cause hearing before a judicial officer).
>
> * * *
>
> Accordingly, we have held that "the Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause." *Villanova v. Abrams,* 972 F.2d 792, 797 (7th Cir. 1992); *see also Brokaw v. Mercer County,* 235 F.3d 1000, 1018 n. 14 (7th Cir. 2000) (after a probable cause hearing the Fourth Amendment no longer applies); *Luck v. Rovenstine,* 168 F.3d 323, 326 (7th Cir. 1999) (Fourth Amendment applies before the probable cause hearing and Due Process Clause applies after); *Reed v. City of Chi.,* 77 F.3d 1049, 1052 (7th Cir. 1996) (the "seizure" of an arrestee ends after the probable cause hearing). Our cases thus establish that the protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause

> hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction.

*Lopez v. City of Chicago*, 464 F.3d 711, 718 -719 (7th Cir. 2006); *see also Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007).  Okoro was arrested on a citation, not a warrant or indictment, and there is no indication that he was ever given a probable cause hearing.  *See*  Docs. 97-1, 97-2.   Defendants assert:  "In Illinois there is no right to a Preliminary Hearings [sic].  725 ILCS 5/109-1 *et seq*."   (Doc. 147, p. 2 ¶ 3).   Although 725 ILCS 5/109-1 does not require a preliminary hearing[3], except in "appropriate cases," and 725 ILCS 5/109-3 only requires a preliminary hearing for felony offenses.   Nevertheless, in accordance with *Gerstein*, a warrantless arrest would require either a probable cause hearing or indictment.  Defendants make much of the fact that Okoro had an initial appearance and arraignment before a judge.   However, neither an initial appearance, nor a preliminary hearing necessarily entails a probable cause determination.  *See* 725 ILCS 5/109-1(b), *see also Gerstein*, 420 U.S. at 124-125.  As *Gerstein* explains*,* being informed of the charge and having a judicial officer determine probable cause are legally distinct acts.

At this time, there is no evidence before the Court that Okoro ever had a probable cause hearing, or that he waived his constitutional right under the Fourth Amendment and *Gerstein* to have a judicial officer find probable cause to believe that he committed the offense charged.   Therefore, the Court must apply the Fourth Amendment standard of liability to the Section 1983 claims in this case.

---

[3] Under Illinois law, the probable cause determination would typically occur at the preliminary hearing, unless waived by the Defendant, and/or superseded by an indictment.  *See* 725 ILCS 109-3, 109-3.1(b).

Defendants' position, as originally briefed, is that, even under the Fourth Amendment "objectively unreasonable" standard (which lowers the threshold for liability), they are entitled to summary judgment because they did not provide mental and medical care; that care was provided by the non-moving Defendants, HPL, Dr. Chhabra and Nurse Lynn.

In the medical needs context, there are four aspects to consider when determining whether a defendant's conduct was objectively unreasonable:  (1) the defendant must have notice of the arrestee's medical need, by word or by observation of physical symptoms; (2) the seriousness of the medical need—based on a sliding scale, balanced against the third factor; (3) the scope of the requested treatment; and (4) "police interests" relevant to the reasonableness determination, encompassing such factors as administrative, penological, or investigatory concerns.  *Williams*, 509 F.3d at 403; *Sides v. City of Champaign*, 496 F.3d 820, 823, 827-828 (7th Cir. 2007).

Defendants' argument is premised upon the assertion that they did not provide mental or medical health care to Okoro; rather, such care was provided by HPL, Dr. Chhabra and Nurse Lynn.  From Defendants' perspective, they were all merely following the directions of Nurse Lynn and Dr. Chhabra.   Citing *Greeno v. Dailey*, 414 F.3d 645 (7th Cir. 2005), and its progeny, *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010), Defendants contend that they are not required to make their own medical determinations.   In *Greeno*, an Eighth Amendment case, the Court of Appeals for the Seventh Circuit adopted the Third Circuit's reasoning for absolving non-medical prison officials of liability when a medical concern is referred to the prison medical providers:

> If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a

> prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Greeno*, 414 F.3d at 656 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)).  However, in *Greeno* the appellate court recognized, "[p]erhaps it would be a different matter if [the defendant] had ignored [the plaintiff's] complaints entirely. . . ."  *Id*.  In *Greeno*, a non-medical prison official was found not to be deliberately indifferent because he responded to an inmate's complaints by speaking to medical staff, who assured the official that the inmate's concerns were being addressed.  *Id*. at 657.  In *Spruill*, the Court of Appeals for the Third Circuit included just such a caveat:  ". . . absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  *Spruill*, 372 F.3d at 236; *see also Johnson v. Doughty*, 433 F.3d 1001 1010 fn.9 (7th Cir. 2006) (quoting *Spruill* and citing *Greeno*, 414 F.3d at 656).

Although Dr. Chhabra and Nurse Lynn were monitoring the blood sugar logs, the division of labor was blurred.  The non-medical Jail officials were trained and were responsible for monitoring Okoro's blood sugar and administering insulin, making adjustments based on a sliding scale.  The non-medical Jail officials were also relied upon to relay their observations to Nurse Lynn and Dr. Chhabra.  Questions of material fact remain regarding whether the Jail officials saw Okoro's rising blood sugar levels and unusual behavior and did not alert the medical personnel.  A jury could conclude that the information known to the non-medical Jail officials would have lead a reasonable Jail official to act differently. *See Egebergh v. Nicholson*, 272 F.3d 925 (7th Cir. 2001) (summary judgment denied to defendant police officers who knew

detainee was diabetic and complaining of feeling shaky and woozy, and who also knew that a diabetic deprived of insulin can be seriously harmed, even though the arrestee had been seen by a physician).

The issue of qualified immunity cannot be determined at this time, because it turns on the applicable standard of liability (the factual underpinnings of which are not entirely clear from the present record), and factual determinations yet to be made by a jury.  *See Egebergh v. Nicholson*, 272 F.3d 925 (7th Cir. 2001).

Therefore, Defendants' motion for summary judgment on the Section 1983 civil rights claims lodged against the Defendants in their individual capacities (Counts III-XI) is **DENIED**.

### b. Federal Civil Rights Claims Under *Monell*

Count I asserts a Section 1983 civil rights claim against Williamson County, similar to the claims asserted against each individual Jail Defendant in Counts III-XI.  Counts II, III and IV assert similar claims against Sheriff Vick, Sheriff Cundiff and Captain Tyner in their official capacities.[4]

In *Monell v. N.Y. City Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court ruled that municipal liability will exist only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Id*. at 694.   In *Board of County*

---

[4] Defendants construe Count V against Defendant Sweetin and Count VI against Defendant Craig as asserting official capacity *Monell* claims.  However Defendants Sweetin and Craig appear to only be sued in their individual capacities, so the Court does not perceive Counts V and VI to be *Monell* claims.

*Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397 (1997), the Supreme Court

further specified:

> As our § 1983 municipal liability jurisprudence illustrates, however, it is
> not enough for a § 1983 plaintiff merely to identify conduct properly
> attributable to the municipality. The plaintiff must also demonstrate that,
> through its *deliberate* conduct, the municipality was the "moving force"
> behind the injury alleged. That is, a plaintiff must show that the municipal
> action was taken with the requisite degree of culpability and must
> demonstrate a direct causal link between the municipal action and the
> deprivation of federal rights.

*Bryan County*, 520 U.S. at 404.

The official capacity claims against Sheriff Vick, Sheriff Cundiff and Captain

Tyner are treated as claims against the County, hence the similar legal standard for liability:

> In order to survive summary judgment on a § 1983 official-
> capacity claim, the plaintiff must present evidence demonstrating the
> existence of an "official policy, widespread custom, or deliberate act of a
> county decision-maker of the municipality or department." *Wagner v.
> Washington County,* 493 F.3d 833, 836 (7th Cir.2007). Further, the
> plaintiff must show that the official policy or custom was the *cause* of the
> alleged constitutional violation-the " 'moving force' behind it." *Estate of
> Sims,* 506 F.3d at 514 (quoting *City of Canton, Ohio v. Harris,* 489 U.S.
> 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

*Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008).

Relative to fault and causation, single instances, random acts and isolated

instances are usually insufficient to establish municipal liability.  *Id.* at 405-410; *see Gable v.*

*City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002).  A single occurrence will suffice "only where

the evidence that the municipality had acted and the plaintiff had suffered a deprivation of

federal rights also proved fault and causation."  For example, "one application of [an] offensive

policy resulting in a constitutional violation is sufficient to establish municipal liability.  *Calhoun*

*v. Ramsey*, 408 F.3d 375, 379-380 (7th Cir. 2005) (citing *City of Oklahoma v. Tuttle*, 471 U.S.

15

808, 822 (1985)).   However, where "widespread practices that are not tethered to a particular written policy" are involved, more evidence than a single incident is needed to establish liability. *Calhoun*, 408 F.3d at 380 (citing *Tuttle*, 471 U.S. at 822-823)).   "'[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the [omission in the policy] and the constitutional deprivation.'"   *Calhoun*, 408 F.3d at 380-381 (quoting *Tuttle,* 471 U.S. at 824 (footnote omitted)).

Williamson County, Vick, Cundiff and Tyner argue that, because there is no causal link between any municipal policy or practice and the alleged constitutional violations, and because this is a single, isolated incident, Plaintiff's *Monell* claims fail.   Citing *City of Canton v. Harris*, 489 U.S. 378, 389-390 (1989), Plaintiff counters that municipal liability exists because Williamson County, by and through its officials, failed to train its employees to recognize and report symptoms of diabetic distress in mentally ill, barely communicative, inmates.

In *Bryan County*, the Supreme Court addressed *Canton* and inadequate training claims:

> We concluded in *Canton* that an "inadequate training" claim could be the basis for § 1983 liability in "limited circumstances." *Id.,* at 387, 109 S.Ct., at 1204. We spoke, however, of a deficient training "program," necessarily intended to apply over time to multiple employees. *Id.,* at 390, 109 S.Ct., at 1205. Existence of a "program" makes proof of fault and causation at least possible in an inadequate training case. If a program does not prevent constitutional violations, municipal decision makers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action-the "deliberate indifference"-necessary to trigger municipal liability. *Id.,* at 390, n. 10, 109 S.Ct., at 1205, n. 10 ("It could . . . be that the police, in exercising their discretion, so often violate constitutional rights that the need for

> further training must have been plainly obvious to the city policymakers,
> who, nevertheless, are 'deliberately indifferent' to the need"); *id.,* at 397,
> 109 S.Ct., at 1209 (O'CONNOR, J., concurring in part and dissenting in
> part) ("[M]unicipal liability for failure to train may be proper where it can
> be shown that policymakers were aware of, and acquiesced in, a pattern of
> constitutional violations . . ."). In addition, the existence of a pattern of
> tortious conduct by inadequately trained employees may tend to show that
> the lack of proper training, rather than a one-time negligent administration
> of the program or factors peculiar to the officer involved in a particular
> incident, is the "moving force" behind the plaintiff's injury. See *id.,* at
> 390-391, 109 S.Ct., at 1205-1206.

*Bryan County*, 520 U.S. at 407-408 (all internal citations are to *City of Canton*, 489 U.S. 378,

109 S.Ct. 1197).

The Court has already concluded that questions of fact remain regarding the

policy and/or custom of dividing responsibility between the medical team and the non-medical

Jail officials.  However, even if there is individual liability, *and* an official policy or custom

caused Okoro's death, the requisite pattern is absent.  The tragic consequence of this single

incident is insufficient to show the notice and continued adherence to a flawed training program

that is required for municipal liability.  The training program and the policies and customs, as

they are meant to apply to reoccurring circumstances, do not themselves violate federal law, and

they do not present an objectively obvious potential for a violation and the "highly predictable

consequence" required for liability under *City of Canton* and *Bryan County*.  Therefore,

Defendants Williamson County, Sheriff Vick, Sheriff Cundiff and Captain Tyner are

**GRANTED** summary judgment relative to Plaintiff's *Monell* claims, Counts, I-IV.  The Section

1983 claims in Counts III and IV against Defendants Cundiff and Tyner in their individual

capacities shall proceed.

### c.  **State Law Claims**

In addition to the federal claims, the Second Amended Complaint contains claims against the Defendants under Illinois law: the Wrongful Death Act, 740 ILCS 180/1; the Survival Act, 755 ILCS 5/27-6; the Family Expense Act, 750 ILCS 65/15, and the common law relative to intentional infliction of emotional distress, *respondeat superior* liability, and willful and wanton conduct.

Plaintiff now abandons her claims the Family Expense Act, Counts XLVI-LX (Doc. 97, p. 33 n. 1).  In accordance with Federal Rule of Civil Procedure 41(a)(2), Counts XLVI-LX are **DISMISSED**, without prejudice.

Having concluded that Williamson County is entitled to summary judgment on the federal Section 1983/*Monell* claim, in accordance with 28 U.S.C. § 1367(c), the Court must now consider whether to retain supplemental jurisdiction over the state law claims asserted against the County.   In a case containing both state and federal claims, the Court may exercise supplemental jurisdiction over the state law claims when those claims arise out of the same case or controversy that affords the Court subject matter jurisdiction over the federal claims.   28 U.S.C. § 1367(a).  *See United Workers of America v. Gibbs,* 383 U.S. 715, 725 (1966); *Myers v. County of Lake,* 30 F.3d 847, 850 (7th Cir. 1994). The decision regarding retention of supplemental claims is left to the discretion of the Court. 28 U.S.C. § 1367(c);*VanHarken v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir.1997).  "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co., 193 F.3d 496,*501 (7th Cir. 1999).   In this instance, the Court will not depart from that usual practice, except in relation to Count LXXVIII, the Indemnification claim against the County.   Including the state law tort

claims against the County will unnecessarily complicate the case and could confuse a jury. Therefore, the Court declines to retain supplemental jurisdiction over Williamson County, and the state law claims against it; Counts XVI, XXXI, LXI, LXXVII, LXXIX are all **DISMISSED**, without prejudice.

The Court will retain supplemental jurisdiction over Count LXXVIII, regarding indemnification of County employees because, by statute, a local entity pays tort judgments and settlements for compensatory damages relative to employees acting with the scope of their employment.  *See* 745 ILCS 10/9-102; 745 ILCS 10/2-109.

### i.        Illinois Tort Immunity Act

Defendants claim immunity under the Illinois Tort Immunity Act, §§ 745 ILCS 10/4-103 and 10/4-105.  In relevant part, Section 10/4-103 pertains to the failure to provide personnel and supervision:

> § 4-103. Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein. Nothing in this Section requires the periodic inspection of prisoners.

Section 10/4-105 pertains to the failure to provide medical care to prisoners:

> § 4-105. Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners.

Plaintiff does not address Section 10/4-103, regarding failure to provide personnel and supervision.  Relative to Section 10/4-105, regarding provision of medical care, Plaintiff contends that a jury could find that Defendants acted willfully and wantonly, and that that factual

characterization should be left to the jury.  Plaintiff cites *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008), which cites *Stamat v. Merry*, 397 N.E.2d 141, 145 (Ill.App. 1st Dist. 1979), for the proposition that whether conduct is willful and wanton is "usually" a question for the jury to decide.

Insofar as the factual allegations incorporated into the state law claims pertain to insufficient personnel or supervision, Defendants are entitled to immunity under the Illinois Tort Immunity Act, § 745 ILCS 10/4-103.   Accordingly, Defendants are **GRANTED** summary judgment as to those specific aspects of Plaintiff's state law claims.

Section 10/4-5 affords Defendants immunity relative to the provision of medical care, but not if they acted willfully and wantonly.  Defendants argue that Plaintiff's claims under Wrongful Death Act (740 ILCS 180/1), the Survival Act (755 ILCS 5/27-6), and the common law claims for willful and wanton conduct, all fail because Plaintiff has not established that Defendants' conduct even approached the intentional level required for culpability.

The Illinois Tort Immunity Act defines "willful and wanton" as an utter indifference or conscious disregard to the safety of another. 745 ILCS 10/1-210.  For the sake of comparison, the Court of Appeals for the Seventh Circuit has held that the "willful and wanton" standard and the "deliberate indifference standard" are remarkably similar.   *Williams v. Rodriguez*, 509 F.3d 392, 404-405 (7th Cir. 2007).  Illinois has also equated the two standards. *See Moran v. City of Chicago*, 676 N.E.2d 1316, 1325 (Ill.App.1[st] Dist. 1997).   Defendants reference their arguments regarding the Section 1983 federal claims, as analyzed under the Fourteenth Amendment (and Eighth Amendment).

Just as the Court concluded that summary judgment was not appropriate at this time relative to the Section 1983 federal claims under the Fourth Amendment standard, summary

judgment is inappropriate relative to these state law claims.  Questions of material fact remain for the jury to decide.  There is no dispute that Defendants were aware that Okoro was a diabetic, and that diabetes is a serious medical condition that requires careful monitoring.  Correctional Officer Watts' testimony indicates that a correlation between Okoro's behavior and his blood sugar levels was recognized.  The evidence indicates that the Defendants were trained and were responsible for taking blood sugar readings and adjusting the insulin dosages; and they were responsible for relaying their observations and any other medical issues to the medical Defendants.  A jury could conclude that, in some respect, Defendants' actions or inactions were willful and wanton, and causally linked to Okoro's death.  These factual matters are best left to the jury.   Therefore, Defendants' motion for summary judgment will be **DENIED**, relative to alleged behavior regarding the provision of medical care that rises to the level of "willful and wanton" action.

### ii.      Illinois Wrongful Death Act

Counts  XVI-XXVI,  allege  claims  against  the  Defendants  under  the  Illinois Wrongful  Death  Act,  740  ILCS  180/1.   A  claim  under  the  Act  requires  proof  that:  "'(1) defendant owed a duty to decedent; (2) defendant breached that duty; (3) the breach of duty proximately  caused  decedent's  death;  and  pecuniary  damages  arising  therefrom  to  persons designated under the Act.'" *Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006) (quoting *Leavitt v. Farwell Tower Ltd. Partnership,* 625 N.E.2d 48, 52 (Ill. App. 1st Dist. 1993)). A defendant's conduct must be willful and wanton for liability to attach.   *See Richman v. Sheahan*, 270 F.3d 430, 442 (7th Cir. 2001).  Again, a jury must decide whether the Defendants' conduct was willful and wanton.  Therefore, Defendants' motion for summary judgment will be

**DENIED**, relative to the Illinois Wrongful Death Act claims asserted against the remaining Jail Defendants in their individual capacities, Counts XVII-XXVI.

### iii.      Illinois Survival Act

Counts XXXI-XLI are claims against the Defendants pursuant to the Illinois Survival Act, 755 ILCS 5/27-6.  More specifically, these claims allege:  "As a result of the misconduct described…, Phillip Okoro was battered and was forced to endure great conscious pain and suffering before his death."  Plaintiff, on behalf of herself, the Estate and Okoro's next-of-kin, sues for damages for Okoro's conscious pain and suffering.  Defendants parse these claims, contending there is no evidence of any battery, or that Okoro was denied medical care.  Plaintiff does not specifically address this argument.

Again, the remaining factual issues preclude summary judgment regarding whether Okoro was generally denied medical care.

As a general matter, a battery claim requires an intentional act by Defendants which results in contact with Okoro.  *See McNeil v. Carter*, 742 N.E.2d 1277, 1281 (Ill. App. 3rd Dist. 2001).  Defendants are correct to the extent that there is no evidence of an offensive touching in the traditional sense; for example, Okoro was not struck.  However, in the medical context, a battery claim may be based upon a lack of informed consent to medical procedures, which, due to lack of consent, result in offensive contact.  *See McNeil v. Brewer*, 710 N.E.2d 1285, 1288 (Ill.App. 3rd Dist. 1999).  Defendants offer merely an assertion that there was no battery; they do not even delve into what is required to establish a battery claim. This argument is not presented in a manner that allows for proper analysis by the Court, so Defendants' motion for summary judgment on the Survival Act claims against the remaining Jail Defendants in their individual capacities, Counts XXXIII-XLI, is **DENIED**.

### iv.   **Intentional Infliction of Emotional Distress**

Defendants argue that they are entitled to summary judgment on Counts LXI-LXXI, which allege Intentional Infliction of Emotional Distress, because Plaintiff has produced no evidence of extreme and outrageous conduct, which is an element of the offense.  *See Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976).   A jury could conclude that Defendants' conduct, as summarized in this Order, was extreme and outrageous, "beyond all possible bounds of decency." *See Id*.   Therefore, Defendants' motion for summary judgment on the remaining claims against the Jail Defendants in their individual capacities for Intentional Infliction of Emotional Distress, Counts LXIII-LXXI, is **DENIED**.

### 4.   <u>Conclusion</u>

For the reasons stated:

• Defendants' motion to supplement their reply (Doc. 147) is **DENIED**.

• The motion for summary judgment filed by Defendants Bennie Vick, in his official capacity as Sheriff of Williamson County, Tom Cundiff, individually and in his official capacity as former Sheriff of Williamson County; Captain Gary Tyner, individually and in his official capacity as Captain of the Williamson County Jail, the County of Williamson, Lieutenant David Sweetin, Lieutenant Robert Craig, Sergeant Dennis Pinkerton, Officer Darren Ferrell, Officer Ryan Horn, Officer Brandi Milani and Officer C.J. Watts (Doc. 89) is **GRANTED IN PART AND DENIED IN PART**.

> • Defendants' motion for summary judgment on the Section 1983 civil rights claims lodged against the Defendants in their individual capacities, Counts III-XI, is **DENIED**.

> • Defendants are **GRANTED** summary judgment relative to Plaintiff's *Monell* claims, Count I, relative to County of Williamson, and Counts II, III and IV, insofar as Defendants Vick, Cundiff and Tyner are sued in their official capacities under *Monell*.

• The Court declines to retain supplemental jurisdiction over Williamson County, and the state law claims against it; Counts XVI, XXXI, LXI, LXXVII, LXXIX are all **DISMISSED**, without prejudice.

• The Court will retain supplemental jurisdiction over Count LXXVIII, regarding indemnification of County employees.

• In accordance with Federal Rule of Civil Procedure 41(a)(2), Plaintiff's claims under the Family Expense Act, Counts XLVI-LX (as to all Defendants) are **DISMISSED**, without prejudice.

• Insofar as the factual allegations incorporated into the state law claims pertain to insufficient personnel or supervision, Defendants are entitled to immunity under the Illinois Tort Immunity Act, § 745 ILCS 10/4-103. Accordingly, Defendants are **GRANTED** summary judgment as to those specific aspects of Plaintiff's state law claims, but **DENIED** relative to alleged behavior regarding the provision of medical care that rises to the level of "willful and wanton" action.

• Defendants' motion for summary judgment is **DENIED**, relative to the Illinois Wrongful Death Act claims asserted against the remaining Jail Defendants in their individual capacities, Counts XVII-XXVI.

• Defendants' motion for summary judgment on the Survival Act claims against the remaining Jail Defendants in their individual capacities, Counts XXXIII-XLI, is **DENIED**.

• Defendants' motion for summary judgment on the claims against the remaining Jail Defendants in their individual capacities for Intentional Infliction of Emotional Distress, Counts LXIIII-LXXI, is **DENIED**.

Defendant County of Williamson remains in the case, but only as to Count LXXVIII, the claim regarding indemnification.

All claims against Defendant Bennie Vick, who was sued only in his official capacity, have been resolved. Vick was granted summary judgment on Count II, and the Court declines to retain supplemental jurisdiction over Counts XVII, XXXIILXIIL, and XXX. Judgment shall enter in favor of Vick and against Plaintiff at the conclusion of the case.

All other claims against all other Defendants shall proceed. However, the Court observes that Defendant Unknown Employees and Supervisors of Williamson County Jail have

never been identified, nor have they been served with summons and the complaint.  Therefore, they are ripe for dismissal at the final pretrial conference.

**IT IS SO ORDERED.**

**DATED:  March 22, 2012**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**