IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JACLYN CURRIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No.  09-cv-866-MJR |
| TOM CUNDIFF, ) | |
| WILLIAMSON COUNTY, ILLINOIS, ) | |
| UNKNOWN EMPLOYEES AND ) | |
| SUPERVISORS OF WILLIAMSON ) | |
| COUNTY JAIL, ) | |
| GARY TYNER, ) | |
| DAVID SWEETIN, ) | |
| ROBERT CRAIG, ) | |
| DENNIS PINKERTON, ) | |
| OFFICER DARREN FERRELL, ) | |
| OFFICER R. HORN, ) | |
| OFFICER BRANDY MILANI, ) | |
| OFFICER C.J. WATTS, ) | |
| HEALTH PROFESSIONALS, LTD., ) | |
| DOCTOR JOGENDRA CHHABRA, and ) | |
| MARILYN ANN LYNN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Before the Court is Defendants Health Professionals, Ltd., Dr. Jogendra Chhabra and Nurse Marilynn Ann (Lynn) Reynolds' Motion to Dismiss Plaintiff's Fourth Amended Complaint, or in the Alternative, for Summary Judgment (Docs. 191, 192).  Plaintiff Jaclyn Currie has filed a response (Doc. 203), to which Defendants have filed a reply[1] (Doc. 204).

---

[1] ILSD Local Rule 7.1 cautions:  "Reply briefs are not favored and should be filed only in exceptional circumstances."  The unusual posture of this case and the parties' differing interpretations of certain key cases constitute exceptional circumstances, so the reply will be considered by the Court, even though it adds little or nothing to Defendants principal brief.

1

I. <u>The Nature of the Case and Relevant Procedural History</u>

In December 2008, Phillip Okoro, who was being held in the Williamson County Jail, died as a result of diabetic ketoacidosis.[2] Plaintiff Jaclyn Currie, as administrator of Okoro's estate, and as the personal representative of his heirs, brought suit on October 14, 2009 (Doc. 2). Plaintiff filed suit against jail officials, the contract healthcare providers and their employer, Health Professionals, Ltd., and Williamson County, Illinois.

Williamson County and the jail officials were denied summary judgment and shortly thereafter reached a settlement agreement with Plaintiff (which has yet to be approved by the Court). The settlement was reached just hours after the Court ruled that the federal civil rights claims were governed by the Fourth Amendment's "objectively unreasonable" standard, which is applicable to arrestees who have not had a probable cause hearing, rather than the "deliberate indifference" standard that applies to pretrial detainees by way of the Fourteenth Amendment. *See Gerstein v. Pugh,* 420 U.S. 103, 123-125 (1975); *Lopez v. City of Chicago*, 464 F.3d 711, 718 -719 (7th Cir. 2006); *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007).

The Complaint, and the First, Second and Third Amended Complaints all alleged "deliberate indifference," the standard associated with the Fourteenth Amendment and applicable to pretrial detainees. No specific provision of the Constitution was ever cited. Okoro's custodial and legal status apparently did not come into question until after the close of discovery, when Plaintiff responded to the Williamson County defendants' motion for summary judgment relative to the Second Amended Complaint and questioned which legal standard was applicable (Doc.

---

[2] According to the National Institute of Health (NIH), diabetic ketoacidosis occurs in people with diabetes when the body cannot use sugar (glucose) as a fuel source because there is no insulin or not enough insulin, so fat must be used for fuel instead, which creates a byproduct known as ketones. Keytones are acids, and in high levels they are poisonous; this condition is known as ketoacidosis and it can be fatal.  http://www.nlm.nih.gov/medlineplus/ency/article/000320.htm

97, pp. 21-23). The medical defendants, Health Professionals, Ltd., Dr. Chhabra and Nurse Reynolds, had never sought summary judgment or otherwise attacked Plaintiff's pleadings.

In light of the Court's March 22, 2012, Order, and because the Williamson County defendants' various claims and defendants were no longer in the case, and for other "housekeeping" reasons, Plaintiff was directed to file a Third Amended Complaint in advance of trial, which was set to begin on April 2, 2012.[3] The Third Amended Complaint did not alter the way the Section 1983 constitutional claims were pleaded; therefore, the medical defendants' motion to dismiss was granted, without prejudice. The Fourth Amended Complaint (Doc. 180) now controls.

Defendants now, for the first time, assert qualified immunity.

## II.     Applicable Procedural Standards

Defendants move to dismiss the Fourth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim; in the alternative, they seek summary judgment pursuant to Rule 56. The Court will treat the motion as a motion to dismiss. Defendants' arguments are all framed consistent with a Rule 12(b)(6) motion directed at the pleadings, and the Court need not look beyond the Fourth Amended Complaint to decide all of the issues raised.

Dismissal is warranted under Rule 12(b)(6) if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *EEOC v. Concentra Health Services, Inc.,* 496 F.3d 773,

---

[3] In accordance with Federal Rule of Civil Procedure 16(c)(2)(B), at the conclusion of the final pretrial conference, Plaintiff was directed to amend the complaint in order "to define the issues, facts, and theories actually in contention, which means that extraneous issues should be weeded out ...." 6A Charles A. Wright, Arthur R. Miller, Mary K. Kane and Richard L. Marcus,  Federal Practice and Procedure § 1525, at 242 (3d ed. 2012) (footnotes omitted).

776 (7th Cir. 2007). In making this assessment, the District Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Tricontinental Industries, Inc., Ltd. V. Price Waterhouse Coopers, LLP,* 475 F.3d 824, 833 (7th Cir. 2007); *Marshall v. Knight,* 445 F.3d 965, 969 (7th Cir. 2006). Although federal complaints need only plead claims (not facts), "plaintiffs are not required to plead legal theories, even in the new world of pleading that is developing in the wake of *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal.*" *Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 909 (7th Cir. 2012) (full citations omitted); *see also Crawford-El v. Britton*, 523 U.S. 574, 595 (1998) (pleading standard is not altered in anticipation of a qualified immunity defense).

In *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008), the Court of Appeals for the Seventh Circuit emphasized that even though *Bell Atlantic v. Twombly* "retooled federal pleading standards," notice pleading is still all that is required. "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id. Accord Pugh v. Tribune Co.,* 521 F.3d 686, 699 (7th Cir. 2008) (the allegations "must be enough to raise a right to relief above the speculative level").

### III.   Timing of the Motion

As a preliminary matter, before delving into the issues and analysis, the Court must address Plaintiff's objection that Defendants' motion to dismiss is untimely. Plaintiff characterizes the motion as "a last-ditch effort to avoid trial," and argues that these Defendants have waived their right to assert qualified immunity by waiting until the month before trial.

Plaintiff's protestations are disingenuous. Plaintiff pleaded "deliberate indifference" through the Third Amended Complaint, and only requested that the Court decide

the appropriate standard in response to the Williamson County defendants' motion for summary judgment (Doc. 97, p. 21).  At that time, Plaintiff described the issue as "largely academic" (Doc. 97, p. 22).  Two weeks <u>after</u> contending the Fourth Amendment was applicable, Plaintiff stated, "This is a case about whether Phillip Okoro received the medical care required under the Fourteenth Amendment to the U.S. Constitution . . ." (Doc. 119, p. 1).  Plaintiff cannot have it both ways.  Nevertheless, the Court recognizes that Defendants did not make a Rule 12(b)(6) challenge to the previous three permutations of the complaint.

In *Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008), the Court of Appeals recognized that "[t]he pleading standard is no different simply because qualified immunity may be raised as an affirmative defense," "the rule that qualified immunity must be resolved at the earliest possible stage must be tempered by the notice pleading requirements of Rule 8. *Id*. at 1090 (internal citations omitted).  It was not until the Fourth Amended Complaint, filed May 25, 2012, that Plaintiff's pleadings reasonably suggested that the Fourth Amendment was applicable, as opposed to the Fourteenth Amendment.

In *McGee v. Bauer*, 956 F.2d 730 (7th Cir. 1992). The Court of Appeals for the Seventh Circuit faced a somewhat similar situation, where the parties went to trial on the fifth amended complaint; the defendant raising qualified immunity had been added, dismissed, and added again as a party to the case.  The appellate court concluded that qualified immunity had not been waived, even though it was not asserted until the directed verdict stage of trial.  "Having been the cause of this shifting litigation, [the plaintiff] may not now claim waiver on the part of [the defendant]."  *Id*. at 734.   Accordingly, this Court concludes that Defendants have not waived qualified immunity as a defense.

IV. Issues Presented

Defendants Health Professionals, Ltd., Dr. Chhabra and Nurse Reynolds move to dismiss Count One through Three of the Fourth Amended Complaint—the civil rights claims under 42 U.S.C. § 1983. Put succinctly, Defendants Chhabra and Reynolds contend that, relative to Counts Two and Three, they are entitled to qualified immunity as a matter of law because the Fourth Amendment has not been applied to licensed medical professionals subcontracted to care for state detainees. Defendant Health Professionals, Ltd. ("HPL") asserts that Count One cannot stand because HPL cannot practice medicine under Illinois law, and the Fourth Amendment standard cannot be extended to apply to HPL. Assuming the Section 1983 claims are dismissed, Defendants invite the Court to relinquish supplemental claims over the remaining state law claims, Counts Four through Sixteen.

V. Analysis

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). . . . The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

*Pearson v. Callahan*, 55 U.S. 223, 231 (2009). It is a matter of discretion whether to first determine whether the official's conduct violated a constitutional right, or to determine whether the right was clearly established at the time of the conduct. *Id*. at 242.

Qualified immunity protects an official from suit and liability if a reasonable official could have believed that the action taken was lawful, in light of clearly established law and the information the officer possessed at the time, in the situation confronted. *See Saucier v.*

6

*Katz*, 533 U.S. 194, 201 (2001); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Davis v. Scherer*, 468 U.S. 183, 191 (1984). "In determining whether a right is 'clearly established,' we look first to controlling precedent on the issue from the Supreme Court and from this circuit." *Estate of Escobedo v. Bender,* 600 F.3d 770, 781 (7th Cir. 2010). If such precedent is lacking, the Court looks to all relevant case law to determine "'whether there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.'" *Id.* (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000)). Even dicta, in certain cases, can clearly establish a right. *Phillips v. Community Insurance. Corp*. 678 F.3d 513, 527-528 (7th Cir. 2012) (citing *Estate of Escobedo* at 786; *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

Citing *Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995), Defendants assert that qualified immunity may be asserted by a contract healthcare provider that is providing services that the State is constitutionally obligated to provide. Although Plaintiff does not question the general availability of qualified immunity as a defense, this issue warrants further analysis.

Section 1983 permits a cause of action against any person who deprives an individual of federally guaranteed rights under color of state law. 42 U.S.C. § 1983. Anyone whose conduct is "fairly attributable to the state" can be sued as a state actor under Section 1983. See *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). However, in *Richardson v. McKnight*, 521 U.S. 399 (1997), and *Wyatt v. Cole*, 504 U.S. 158 (1992), the Supreme Court limited the application of qualified immunity to private individuals to situations where immunity has historically been afforded, based on the policy reasons for immunity (as opposed to a functional approach). Consequently, in *Estate of Gee v. Johnson*, 365 Fed.Appx. 679 (7th Cir.

7

2010), the Court of Appeals for the Seventh Circuit suggested that nurses working for a private corporate healthcare provider, providing medical care to a pretrial detainee in a county jail, would not be entitled to qualified immunity. The appellate court reasoned that prison nurses had not historically enjoyed qualified immunity, and the nurses involved were working as independent contractors, not as agents of the county sheriff. *Id* at 682-683.

Although the analysis offered in *Estate of Gee* is merely dicta, it is inapposite to *Williams v. O'Leary*, cited by Defendants. In any event, the Supreme Court's recent decision in *Filarsky v. Delia*, ___U.S.___, 132 S.Ct. 1657 (Apr. 17, 2012), makes clear that qualified immunity is a defense available in this case.

In *Filarsky*, the Supreme Court distinguished *Richardson* and *Wyatt* and offered a broader statement regarding the applicability of qualified immunity to private actors− antithetical to the Seventh Circuit's thoughts in *Estate of Gee*. In *Filarsky*, a private attorney retained by a city to assist in an internal affairs investigation of a city firefighter was entitled to seek qualified immunity. It was held that, "immunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis." *Filarsky*, 132 S.Ct. 1657, 1665. Observing that, "it is often when there is a particular need for specialized knowledge or expertise that the government must look outside its permanent work force to secure the services of private individuals," the Supreme Court has now clearly afforded immunity to public employees, as well as others acting on behalf of the government, regardless whether the individual sued as a state actor works full-time or on some other basis. *Id*. at 132 S.Ct. 1657, 1665-1666; *see also King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) (parenthetically noting, "Indeed, the Court's recent decision in *Filarsky v. Delia*, ___U.S.___, 132 S.Ct. 1657, 182 L.Ed.2d 662 (2012), to the effect that private contractors are entitled to

8

assert qualified immunity, suggests by parity of reasoning that they are state actors for other purposes as well.").

Having concluded that Defendants may assert qualified immunity, the Court elects to first examine whether Defendants' conduct, as alleged in the Fourth Amended Complaint, could violate a constitutional right; if so, the Court will then determine whether that right was clearly established as of the relevant time period, October 16-December 23, 2008.

### A. Can a Fourth Amendment Claim be Asserted Against these Defendants?

Section 1983 permits a cause of action against any person who deprives an individual of federally guaranteed rights under color of state law. 42 U.S.C. § 1983. Anyone whose conduct is "fairly attributable to the state" can be sued as a state actor under Section 1983. See *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42 (1988), (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)). "'[S]tate employment is generally sufficient to render the defendant a state actor.'" *Id.,* at 49 (quoting *Lugar v. Edmonson Co.,* 457 U.S. 922, 936, n. 18 (1982)). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West*, 487 U.S. at 49-50 (citing *Monroe v. Pape,* 365 U.S.167, 172 (1961)).

As this Court has previously stated, given that the decedent, Phillip Okoro, had been incarcerated for more than two months without a probable cause hearing, as required under *Gerstein v. Pugh,* 420 U.S. 103, 123-125 (1975), *Lopez v. City of Chicago*, 464 F.3d 711, 718 - 719 (7th Cir. 2006), and *Williams v. Rodriguez*, 509 F.3d 392, 402-403 (7th Cir. 2007), the Fourth

9

Amendment standard controls any analysis of Okoro's conditions of confinement and medical treatment. (*See* Doc. 152 for the Court's analysis of this point.) When deciding between the Fourth, Fourteenth and Eighth Amendments, it is the procedural status of the detainee, not the status of the state actor that is relevant.

In terms of guiding legal principles, the Fourteenth Amendment is concerned with due process protections, whereas the Fourth Amendment, in relevant part, bans unreasonable seizures, which encompasses treatment and conditions endured prior to a probable cause hearing (which triggers the transition to the Fourteenth Amendment). *See Lopez*, 464 F.3d at 719 (7th Cir. 2006); and *Sides v. City of Champaign*, 496 F.3d 820, 828 (7th Cir. 2007).

The Fourth Amendment is an objective standard, looking at "what is objectively unreasonable under the circumstances," resulting in a "sliding scale, balancing the seriousness of the medical need with . . . the scope of the requested treatment." *Williams*, 509 F.3d at 403 (citing *Sides*, 496 F.3d 820); *see also Lopez*, 464 F.3d at 718. The Fourth Amendment standard is a lower threshold for liability than the Fourteenth Amendment (*Williams*, 509 F.3d at 403); therefore, the Fourth Amendment is more favorable to Plaintiff. The Fourteenth Amendment has an objective component relative to the seriousness of the medical condition, as well as a subjective requirement of deliberate indifference. *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 664-665 (7th Cir. 2012).

In *Williams*, the appellate court drew from *Sides* four factors relevant to ascertaining whether a defendant's conduct was objectively unreasonable in the "medical needs" context. *Williams*, 509 F.3d at 403.

> The factors are (1) "notice of the arrestee's medical need ... whether by word ... or through observation of the arrestee's physical symptoms"; (2) "the seriousness of the medical need"; (3) "the scope of the requested treatment," which is balanced against the seriousness of the medical need;

> and (4) police interests, a factor which "is wide-ranging in scope and can include administrative, penological, and investigatory concerns." *Williams,* 509 F.3d at 403.

*Florek v. Village of Mundelein, Ill*., 649 F.3d 594, 600 (7th Cir. 2011); *see also Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011).

Defendants do not take issue with the Court's legal conclusion about the general applicability of the Fourth Amendment; rather, they focus on the applicability of the Fourth Amendment to *them*. Defendants argue that *Sides*, *Williams* and other cases addressing the Fourth Amendment standard all pertain to, and reference the actions of law enforcement officers. Defendants stress that, unlike law enforcement officers, as medical providers they do not have search and seizure powers, and they were not responsible for Okoro's custody.

Defendants hone-in on the fact that *Sides* and *Williams* involved law enforcement officers, and that in listing the four relevant factors for consideration in *Williams*, the appellate court makes specific references to: (1) the "officer" being given notice of the medical need; and (2) the consideration of "police interests." The reference to an "officer" being given notice merely reflects that *Sides* and *Williams* involved the conduct of law enforcement officers. As explained in greater detail below, the Fourth Amendment is not merely applicable to law enforcement officials; private individuals and entities may be brought under the ambit of a constitutional provision and Section 1983. The consideration of "police interests" is merely a catch-all term. In any event, "police interests" may be just as relevant to medical professionals, who may be acting in a situation where such interests are a relevant factor. In *Villanova v. Abrams*, 972 F.2d 792, 795-797 (7th Cir. 1992), the Fourth Amendment was deemed applicable

to state psychiatrist caring for someone who had been civilly committed, because a civil commitment is also a "seizure."[4]

In *West v. Atkins*, 487 U.S. 42 (1988), the Supreme Court outlined the constitutional principles underpinning all three Defendants' constitutional liability in this case. In *West*, a private physician, under contract to provide medical services to inmates at a state prison hospital on a part-time basis, was found to be acting under color of state law for purposes of section 1983. The physician refused to schedule an inmate for surgery. The Supreme Court rejected the argument that a professional not exercising custodial or supervisory control, but instead acting in his professional capacity, is not acting under state law. *West*, 487 U.S. at 46, 51-52. The Supreme Court explains:

> It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract.

*Id*. at 55-56. Although *West* pertained to a physician contracting directly with the state, the Supreme Court has stated a broader principle about the delegation of constitutional responsibilities.

---

[4] Defendants attempt to analogize this "medical needs" case to *Sparks v. Stutler*, 71 F.3d 259 (7th Cir. 1995), which pertained to the search and seizure of evidence via a medical procedure. Although both situations are covered by the Fourth Amendment and a "reasonableness" standard , they are like "apples and oranges. *West*, and the factors deemed relevant in *Sides* and *Williams* are specific to "medical needs" cases.

1.   Applicability of the Fourth Amendment to HPL

It is alleged that HPL has a direct contract with Williamson County to provide healthcare to jail inmates (Doc. 180, p. 3 ¶ 7). Thus, HPL is in the same position as the physician in *West*, except that it is not a natural person and must therefore rely upon its employees to deliver medical services. Regardless of that distinction, a private corporation can be liable for the acts of its employees, if the resulting constitutional injury is the result of a corporate policy or practice. *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (recognizing that a private corporation, Zayre department store, could face liability under Section 1983 for actions by its employee security guard who was involved in the detention and arrest of a customer).[5] Recently (albeit eight months after Okoro's death), in *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816 (7th Cir. 2009), the Seventh Circuit reiterated that a private corporate medical provider (an ambulance service) can face liability for its employees' actions. The appellate court premised its decision on *West* and concluded that the delegation of the function is accompanied by a delegation of the constitutional responsibilities. *Id*. at 822, 824-826 (finding the relationship between the state, the EMTs and the prisoner to be dispositive of clothing the defendants with state authority and, thus triggering liability). Therefore, HPL may face liability under Section 1983, provided a policy and practice caused Okoro's injury.

The Fourth Amended Complaint alleges that HPL has a contract with Williamson County to provide evaluation, care and treatment to all arrestees housed at the jail, and that HPL, acting under color of law, failed to provide evaluation, care and treatment that could have

---

[5] *Iskander* analogized the private corporation's liability under the same standard announced in *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978), relative to municipal corporations—rejecting use of the respondeat superior theory, instead requiring a policy or practice that caused the injury. *See also Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (corporation and its employees providing healthcare services to a county jail may be liable under Section 1983).

prevented Okoro's death. (Doc. 180, p. 3 ¶ 7). It is further alleged that Dr. Chhabra and Nurse Reynolds, employees of HPL and acting under color of law, had the responsibility for evaluating Okoro's needs and making appropriate recommendations and/or orders to the jail regarding care and treatment, but they breached that duty, thereby not preventing Okoro's death. (Doc. 180, p. 3 ¶ 8). Count One against HPL, incorporates all other allegations in the complaint, specifically references the Fourth Amendment, and generally tracks the four factors set forth in *Williams*. Count One also alleges that HPL acted with malice and/or reckless disregard, and HPL's actions and omissions were the proximate cause of Okoro's death. (Doc. 180, p. 4-5).

As discussed above, liability under Section 1983 cannot be premised upon vicarious or respondeat superior liability; rather, HPL's liability hinges upon a policy of practice attributable to HPL. *Iskander*, 690 F.2d at 128; *Monell*, 436 U.S. at 690-695.[6]

> [U]nconstitutional policies or customs can take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Rasche v. Village of Beecher*, 336 F.3d 588, 597-598 (7th Cir. 2003). The previously mentioned portions of the complaint, even taken together, fall short of alleging a plausible Section 1983 claim based on an HPL policy, practice or custom. However, Count One against HPL is saved by the incorporation of all paragraphs of the complaint (Doc. 180, ¶ 15), and consideration of one additional allegation.

Count Fourteen, a claim against HPL, alleges: "Defendants maintained a course of action which demonstrated a deliberate intention to harm, or conscious disregard[7] for the

---

[6] The fact that HPL, as a corporation, may not be permitted to practice medicine under Illinois law (225 ILCS 60/1 et seq.) is irrelevant to the *Monell* analysis.

14

safety of others." (Doc. 180, ¶ 64). This additional allegation implies that HPL, Dr. Chhabra and Nurse Reynolds acted collectively; and the phrase "maintained a course of action" can reasonably be read to mean policy, practice or custom. In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the Supreme Court stated relative to municipal liability, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a *course of action* is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483 (emphasis added); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (citing the "course of action" language); *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 675 (7th Cir. 2012) (also citing the "course of action" language). This is particularly so considering the factual allegation that Dr. Chhabra and Nurse Reynolds had the responsibility to "make appropriate recommendations and/or orders to the Jail regarding how to treat and monitor Mr. Okoro." (Doc. 180, ¶ 8). "Even after *Twombly,* courts must still approach motions under Rule 12(b)(6) by 'construing the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor.' " *Hecker v. Deere & Co.,* 556 F.3d 575, 580 (7th Cir. 2009) (*quoting Tamayo v. Blagoyevich,* 526 F.3d 1074, 1081 (7th Cir. 2008). Accordingly, Count One against HPL squeaks by.

1. Applicability of the Fourth Amendment
   to Dr. Chharbra and Nurse Reynolds

   Relative to Dr. Chhabra and Nurse Reynolds, Counts Two and Three similarly reference the Fourth Amendment, track the factors listed in *Williams*, and allege a causal

---

[7] Use of language suggesting a subjective mental state that is required under the Fourteenth Amendment does not alter the viability of a clearly labeled Fourth Amendment claim, particularly when punitive damages are claimed.

connection between each defendant's alleged failure to provide appropriate care and Okoro's death. Therefore, Counts Two and Three also sufficiently state viable claims.

Having determined that the Fourth Amendment is the appropriate constitutional provision, that each defendant falls within the ambit of the Fourth Amendment based on the allegations in the Fourth Amended Complaint and applicable legal precedents, and that Counts One through Three suffice under Rule 8 (even post- *Bell Atlantic v. Twombly*), the second step in the qualified immunity analysis must now be considered, whether during the relevant time period the defendants could have believed the Fourth Amendment was applicable to them.

### B. Should the Applicability of the Fourth Amendment been Anticipated?

Defendants' motion really hinges on whether, during the period October 16-December 23, 2008, when Okoro was jailed, a reasonable person would have anticipated that the Fourth Amendment was applicable in the situation at issue.

It bears repeating that qualified immunity protects an official from suit and liability if a reasonable official could have believed that the action taken was lawful, in light of clearly established law and the information the official possessed at the time, in the situation confronted. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Davis v. Scherer*, 468 U.S. 183, 191 (1984).

*West v. Atkins*, 487 U.S. 42 (1988), established the a private physician, under contract with the state to provide medical services to inmates at a prison hospital on a part-time basis, was acting under color of state law for purposes of Section 1983 because he had taken over the jail's constitutional obligation to provide medical care. *West* provides the essential rationale that allows Dr. Chhabra and Nurse Reynolds, who are not directly employed by Williamson County and who are not law enforcement or jail personnel, to fall within the purview of Section

1983. They have assumed the County's constitutional obligations. Similarly, by way of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), HPL can be found to act under color of law and fall under Section 1983. These essential cases were all decided before Okoro was jailed.

*Villanova v. Abrams*, 972 F.2d 792, 795-797 (7th Cir. 1992), applied the Fourth Amendment to the psychiatric care of someone who had been civilly committed. *Lopez v. City of Chicago*, 464 F.3d 711 (7th Cir. 2006), applied the Fourth Amendment and its "objectively unreasonable" standard to a conditions of confinement claim against police officials because the plaintiff was an arrestee who had not had a probable cause hearing. *Sides v. City of Champaign*, 496 F.3d 820 (7th Cir. 2007), and *Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007), illustrated and delineated factors to consider when applying the Fourth Amendment's "objectively unreasonable" standard to an arrestee's medical needs. These precedents were also all established before Okoro was jailed.

It is irrelevant that these two principles did not come together in a single case prior to Okoro's incarceration. To qualify as "clearly established," the law must provide "fair warning" that the defendant's conduct was unconstitutional. *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003). "'[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *Hope v. Pelzer*, 536 U.S. 730 741 (2002) (quoting *U.S. v. Lanier*, 520 U.S. 259, 270-271 (1997) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). *West* made clear that HPL, Dr. Chharbra and Nurse Reynolds had assumed the constitutional obligations of Williamson County relative to Okoro's medical care; and *Lopez* made clear that the Fourth Amendment was applicable to the conditions of confinement of arrestees like Okoro, who had not had a probable cause determination. Therefore, this Court

concludes that Defendants should have anticipated the applicability of the Fourth Amendment to them relative to Okoro's treatment. Consequently, Defendants are not entitled to qualified immunity.

This Court perceives that its analysis and conclusions are further bolstered by two recent Seventh Circuit cases. In *Ortiz v. City of Chicago*, 656 F.3d 523 (7th Cir. 2011), the Court of Appeals denied qualified immunity in relation to a 2004 incident regarding an arrestee's medical care, because the applicability of the Fourth Amendment to the "arrestee" phase in the criminal process was "quite clear." *Id*. at 538. The appellate court relied on *Luck v. Rovenstine*, 168 F.3d 323, 326 (7th Cir. 1999), and *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992)—both decided before Okoro was jailed. Most recently, in *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 670-673 (7th Cir. March 20, 2012), the Court of Appeals applied the Fourteenth Amendment to a psychiatrist who was at least as far removed from direct state employment as Dr. Chhabra and Nurse Reynolds. In *Rice*, a pretrial detainee was experiencing psychiatric and medical problems while in a county jail. A corporate healthcare provider, contracted to provide medical care to those incarcerated at the jail, referred the detainee to a private psychiatric hospital that was also under contract with the jail. The psychiatrist refused to treat the detainee, who died. The Court of Appeals commented, "We have our doubts as to whether the district court was correct in categorizing [the psychiatrist] as a private rather than a state actor." *Id.* at 671. The appellate court's rationale was premised upon *West* and the concept expressed in *Rodriguez* that, "'when a person a person accepts employment with a private entity that contracts with the state, he understands that he is a [sic] accepting the responsibility to perform his duties in conformity with the constitution.'" *Id*. at 672 (quoting *Rodriguez*, 577 F.3d at 827). The Court of Appeals further stated in dicta: "Had it been possible for [the detainee] to

receive inpatient care from [the psychiatrist] on the premises of the jail, there would be no question that [the psychiatrist] would qualify as a state actor under both *West* and *Redriguez*." *Id*. at 672 (*West* was decided before Okoro or Rice were incarceration; *Rodriguez* was decided after Okoro and Rice were incarcerated). That is Okoro's situation vis-à-vis Dr. Chhabra and Nurse Reynolds—being treated on the premises of the jail by an employee of a contract medical provider.

## VI. Conclusion

For the reasons stated, Defendants Health Professionals, Ltd., Dr. Jogendra Chhabra and Nurse Marilynn Ann (Lynn) Reynolds' Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. 191) is **DENIED** in all respects.

Trial remains set to commence July 16, 2012, and jury selection is scheduled for July 11, 2012, before Magistrate Judge Donald G. Wilkerson. Therefore, as a courtesy, if Defendants elect to pursue an interlocutory appeal, they should alert the Court at the earliest possible time, so that jurors are not called in, and so the Court can adjust its trail calendar accordingly.

**IT IS SO ORDERED.**

**DATED: July 8, 2012**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**